(74 App. Div. 364.)

## DUFF v. BLAIR.

(Supreme Court, Appellate Division, First Department. July 8, 1902.)

1. ACCOUNTING—RIGHT TO DEMAND.

A woman 70 years of age, who had saved about $5,000, applied one evening at a municipal lodging house, and on the following morning was induced to execute a power of attorney to defendant, the superintendent of the out of door poor of such city. He thereupon deposited her money in his own name, and entered into a contract with some Sisters, whereby he agreed to pay $200 for her care and maintenance the first month, $150 the second, $100 the third, $75 the fourth, and $60 a month thereafter. In about six months the Sisters informed him that she was insane, and could not stay any longer, and he thereupon instituted proceedings to have her adjudged insane, which proceedings failed, and he refused to account. Held, that she was entitled to an accounting.

2. SAME—FORM OF ACTION—EFFECT.

The accounting should not have been refused merely because the complaint stated a cause of action ex delicto, the courts looking to the substance, rather than to the form.

Appeal from special term.

Action by Ellen Duff against George Blair. From a judgment dismissing the complaint on the merits, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Henry H. Whitman, for appellant.
George A. Wyre, for respondent.

McLAUGHLIN, J. This action was brought to set aside a power of attorney and for an accounting. The complaint alleged, in substance, that on the 7th of March, 1900, the plaintiff was the owner and in possession of upwards of $4,700, which was deposited to her credit in different savings banks in the city of New York; that late in the evening of that day she applied to and was given lodging in one of the municipal lodging houses for the destitute in such city; that it was then discovered by some of the persons in charge thereof that she had upon her person a small sum of money and several bank books representing deposits in such banks; that on the following morning she was taken to the office of the defendant, who was the superintendent of the out of door poor in such city, and that he then took from her the money which she had, together with her bank books, and induced her to sign an irrevocable power drawn by and constituting himself her attorney to take charge of and manage her affairs, together with an assignment of the bank books and the moneys represented thereby; that immediately thereafter he drew such moneys, and deposited the same in a bank to his personal credit; that prior to the commencement of the action the plaintiff demanded of the defendant that he account for and pay over to her all of such moneys, and that he also deliver up for cancellation the power of attorney, assignment, etc., which he had refused to do, and the judgment demanded was that such papers be canceled and annulled, and

¶ 2. See Action, vol. 1, Cent. Dig. § 316.

that the defendant be directed to account. The defendant, in his answer, admitted the receipt of the moneys, and also the execution of the power of attorney and the assignment, but alleged that the same was the voluntary act of the plaintiff, and that thereafter he had in good faith and in the discharge of his duties as her attorney entered into a contract with the Sisters of St. Dominic, by which the plaintiff was to be maintained, clothed, and cared for during the remainder of her life; and the defendant further alleged that the plaintiff, as he was informed and believed, was mentally deranged, and wholly incompetent to care for herself or her property, and he asked that the complaint be dismissed, with costs. Upon the issue thus formed the parties went to trial, and it was there established that substantially all of the allegations of the complaint were true, and, in addition thereto, that the plaintiff, at the time she signed the power of attorney, was upwards of 70 years of age; that the moneys represented by the various bank books had been earned by her as a cook; that she had no immediate relatives, and that when she applied for admission to the lodging house referred to in the complaint it was late at night, and that she was thinly clad, and in poor health; that on the morning following she was taken to the office of the defendant, and that in less than one hour thereafter he induced her to give him a power of attorney to manage her property, and which contained a clause that in his management of her affairs he should not be subjected to investigation so long "as he carries out the power vested in him for my care"; that on the same day, or the day following, he entered into a contract with the Sisters of St. Dominic, by which he agreed to pay for her care and maintenance during the month of March the sum of $200, April $150, May $100, June $75, and $60 per month thereafter; that in pursuance of the contract the plaintiff was maintained and supported until August, 1901, when the defendant was informed she could no longer remain there; he was also informed that in the opinion of the Sisters the plaintiff was insane; that he thereupon instituted proceedings to have her adjudged insane, but he was unsuccessful in his efforts, and thereafter this action was brought for the purpose of obtaining the relief before stated.

The defendant admitted upon the trial, and the court found, that the defendant had in his possession moneys belonging to the plaintiff, and yet, notwithstanding the foregoing facts, together with this admission and finding, the complaint was dismissed upon the merits, upon the ground, as appears from the opinion of the learned trial justice, that the "complaint states a cause of action ex delicto, and it cannot be converted into one ex contractu." It makes little difference what the cause of action alleged is called. The enforcement of a right or the redress of a wrong never depends upon a name, and in the administration of justice the court looks to the substance, rather than to the form, of an action. The fact is that the complaint here alleges, and the proof offered upon the trial established, that the defendant has in his possession moneys which belong to the plaintiff, and, this being true, she was entitled to have him account for and pay over the same to her on demand; and there is no allegation in the answer or in the proof upon the trial which justified defendant's

action in refusing to do so. Here we have an old and feeble woman, without friends or relatives, who, by her own efforts, and by denying herself many, if not substantially all, the comforts of life, has saved nearly $5,000, and in her declining years, when age has practically destroyed her intellectual powers, her savings are taken from her by the defendant, an utter stranger, on the ground that he will provide for her a home in which she shall be cared for during her life, and upon her death decently buried. After the parties with whom he has entered into a contract for that purpose have refused to perform the same, notwithstanding he has paid them upwards of $1,300, and she has, by reason thereof, called upon him to account to her for her money, he refused to account, and instead instituted proceedings to have her adjudged incompetent to manage her affairs. If such facts do not entitle a party to an accounting, it is difficult to understand what facts would. It is the plaintiff's money. She has a right to be informed what has become of it, and the defendant could not, under the law, refuse to tell her. It is true she had given the defendant a power of attorney, and to the extent that he had acted fairly and in good faith under it she was bound; but the moment she revoked that power then it became the duty of the defendant to turn over to her whatever moneys were left in his hands, less, of course, the expenses incurred and the amount disbursed by him in good faith. It would be a sad commentary upon the administration of justice if this plaintiff, upon the allegations of her complaint, all of which were established at the trial, could not obtain from the defendant an accounting.

The judgment appealed from, therefore, must be reversed; and a new trial ordered, with costs to the appellant to abide the event. All concur.